UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MAIDA DZAKULA, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> JOHN MCHUGH, SECRETARY OF THE ) <br> ARMY, ) <br> ) <br> Defendants. ) <br> _____ ) | Case No.: C 10-05462 PSG <br><br> **ORDER GRANTING MOTION TO DISMISS** <br><br> (Docket No. 14) |

Defendant John McHugh, Secretary of the Army (the "Army"), moves to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6). Plaintiff Maida Dzakula ("Dzakula") opposes the motion. On April 19, 2011, the parties appeared for hearing. Having reviewed the papers and considered the arguments of counsel, the Army's motion to dismiss is GRANTED.

## I. BACKGROUND

In 2002, Dzakula was hired as an Assistant Professor for the Army in the Serbian/Croatian Department of the European and Latin American Language School of the Defense Language Institute ("DLI") at the Presidio of Monterey. In or around February 2008, Dzakula was granted tenure there. Beginning in or around March 2009, Dzakula alleges that she faced an abusive and hostile working environment based on her status as a Bosnian Muslim. She complained to her supervisor regarding her discovery of Serbian music containing offensive lyrics referencing the

ethnic war in Bosnia on a department computer.  The Serbian music that Dzakula had complained of was removed from the department computer but Dzakula began to experience hostility and harassment from her supervisor and other faculty members.  Dzakula alleges that the pattern of hostility and harassment continued until she was removed from her teaching position on October 26, 2009.  DLI later denied Dzakula tuition assistance to complete her doctoral program.

On October 11, 2010, Dzakula and her husband, Bozo Dzakula, filed a voluntary petition for bankruptcy pursuant to Chapter 7.[1]

On December 2, 2010, Dzakula filed a complaint against the Army alleging a violation of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* (the "pending action").  Specifically, Dzakula brings claims for (1) unlawful discrimination based on her religion and national origin; (2) a hostile work environment; and (3) unlawful retaliation for engaging in prior protected Equal Employment Opportunity ("EEO") activity.

On January 17, 2011 and February 14, 2011, Dzakula amended Schedules B and C of her Chapter 7 petition.  On neither occasion, however, did she list the pending suit as an asset.

On February 3, 2011, the Bankruptcy Trustee issued a Report of No Distribution.

On March 1, 2011, the Army moved to dismiss the pending action on the grounds of judicial estoppel.

On March 2, 2011, Dzakula again amended Schedules B and C of her Chapter 7 petition.  The new amendments reflected the pending action as an asset.  A few days later, on March 7, 2011, Dzakula was granted discharge and the bankruptcy case closed.

## II.  LEGAL STANDARD

A debtor has a duty to file a schedule of assets and liabilities.[2]  A schedule may be amended by the debtor as a matter of course at any time before the case is closed.[3]  "It goes without saying that the Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to

---

[1] *See In re Bozo and Maida Dzakula,* Case No. 10-60560 SJL (Bankr. N.D. Cal. 2010).

[2] *See* 11 U.S.C. § 521 (a)(1)(B)(i).

[3] *See* Federal Rules of Bankruptcy Procedure Rule 1009(a).

disclose all assets, including contingent and unliquidated claims."[4]

Judicial estoppel is an "equitable doctrine that precludes a party from gaining advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position."[5] "[A] court invokes judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of 'general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts.'"[6] "The application of judicial estoppel is not limited to bar the assertion of inconsistent positions in the same litigation, but is also appropriate to bar litigants from making incompatible statements in two different cases."[7]

In determining whether to apply the equitable doctrine of judicial estoppel, a court generally considers the following three factors: (1) a party's later position must be clearly inconsistent with its earlier position; (2) whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled; and (3) whether the party seeking to assert an inconsistent position would derive an unfair detriment on the opposing party if not estopped.[8] Notwithstanding the factors enumerated above, in *Hamilton v. State Farm,* the Ninth Circuit noted that "we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel."[9] "Additional considerations may inform the doctrine's application in specific factual contexts."[10]

---

[4] *See In the Matter of Coastal Plains, Inc.,* 179 F.3d 197, 208 (5th Cir. 1999).

[5] *See Hamilton v. State Farm Fire & Casualty Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (internal citations omitted).

[6] *See id.*

[7] *See id.* at 783. (internal citations omitted).

[8] *See id.* at 782.

[9] *See id.* at 783.

[10] *See id.*

## III.  DISCUSSION

The parties' overall arguments are straightforward.  The Army argues that Dzakula is judicially estopped from raising the claims alleged in the pending action as a result of her repeated failure to identify these claims on the schedules and amended schedules she filed in bankruptcy court. Dzakula responds that, unlike the parties in *Hamilton,* she further amended the bankruptcy schedules (as a matter of right) to include the pending action before her bankruptcy case closed. The court specifically considers each of the three *Hamilton* factors below.

### A.     The Plaintiff's Inconsistent Positions

The Army argues that Dzakula had knowledge of sufficient facts giving rise to the pending action as early as October 26, 2009, when she was removed from her teaching position at DLI.  Her voluntary petition for bankruptcy was filed on October 11, 2010 and the pending action was filed on December 2, 2010.  In the interim, Dzakula amended her schedules twice (on January 17, 2011 and February 14, 2011) but on neither occasion did she identify the pending action.  Only after the Army filed its motion to dismiss did Dzakula amend the schedules to include the pending action.  The Army argues that Dzakula directly contradicted her previous representations to the bankruptcy court that the pending action did not exist.

In response, Dzakula points out that under Rule 1009(a), she was entitled to, and that she did, amend the schedules to reflect the pending action before her bankruptcy was discharged and her case closed.

Until Dzakula amended her bankruptcy schedules on March 2, 2011 to reflect the pending action, her positions were clearly inconsistent. While Dzakula amended her schedules to reflect the pending action, she has not provided any explanation whatsoever as to why the pending action was not included on her schedules in the first place.  She is silent on whether omission of the pending action from the schedules was inadvertent or intentional.  For example, in a declaration, Dzakula could have stated whether or not she had knowledge of enough facts to know that she had a potential cause of action against the Army or whether she was, or was not, able to engage counsel who thought enough of her case to represent her and pursue such claims.  Without such information, the court cannot speculate as to Dzakula's sophistication as a litigant and can only conclude that

Dzakula had **inconsistent positions between the bankruptcy court and the pending action.**[11]

**B.     The Bankruptcy Court Was Misled**

Citing *Hamilton v. State Farm,* the Army argues that discharge of the debt by the bankruptcy court before the March 2, 2011 amendment is not a prerequisite for the court to find judicial estoppel. Rather, "judicial acceptance" by the bankruptcy court showing reliance on Dzakula's representations is enough. As proof as judicial acceptance, the Army refers to the February 3, 2011 trustee's report of no distribution to show that Dzakula's representations were accepted by the bankruptcy court.

Dzakula again responds that she had a right to amend the schedules and that she did so in a timely manner. She argues therefore that any defects in her schedules have been addressed and cured.

The court agrees with the Army. On February 3, 2011, the Chapter 7 trustee made a report of "no distribution" to the bankruptcy court. That report was submitted not only before Dzakula's March 3, 2011 third amendment but even before Dzakula had amended her schedules for a second time on February 14, 2011. The fact that Dzakula was permitted under the rules to amend the schedules up to the point of discharge does not justify misleading the Trustee - and therefore the bankruptcy court - before the Trustee declared that no assets were available to satisfy the creditors. This is especially so where, as here, the plaintiff amended the schedules not once, but twice, after filing this suit, and before the Trustee's report was prepared, eliminating any question that she was aware of her claims in this suit at the time of her representations.

**C.     The Plaintiff Derives An Unfair Benefit**

The Army argues that, by failing to disclose the pending action in her earlier schedules, Dzakula is attempting to derive an unfair benefit. It argues that Dzakula can discharge her

---

[11]     *See Scoggins v. Arrow Trucking Co.,* 92 F.Supp.2d 1372, 1373-4 (S.D. Ga. 2000) (noting that plaintiff tendered no affidavit or other explanation to negate the obvious inference that his adversary here is compelling him to honor his bankruptcy obligations."); *Galloway v. Stringer Wellhead Protection, Inc.,* 446 F.Supp.2d 655, 658 (S.D. Miss. 2006) (noting that plaintiff "makes no attempt whatsoever to explain or excuse [her] blatant omission in this regard."). *Cf. White v. Wyndham Vacation Ownership, Inc.,* 617 F.3d 472, 476 (6th Cir. 2010) ("Two circumstances in which a debtor's failure to disclose might be deemed inadvertent are: (1) 'where the debtor lacks knowledge of the factual basis of the undisclosed claims,' and (2) where 'the debtor has no motive for concealment.'") (citing *Browning v. Levy,* 283 F.3d 761, 776 (6th Cir. 2002)).

outstanding debts for a fraction of the amount while shielding a potentially lucrative asset from her creditors.

Dzakula responds that her bankruptcy schedules now include disclosure of the pending action and that nothing has now been hidden from creditors. Pursuant to 11 U.S.C. § 350(b) and Federal Rules of Bankruptcy Procedure 5010, she also argues that the creditors may move to re-open her bankruptcy case.

Absent estoppel, Dzakula would clearly derive an unfair benefit by proceeding with this case. The unfairness was not mitigated by her telling the Trustee about this case after the Trustee's report was issued and just days before the case was closed.[12] Nor is the possibility of re-opening the bankruptcy case based on her after-the-fact amendment sufficient. "[A]fter-the-fact amendments still burden courts by disrupting the orderly administration of bankruptcy estates. The offending litigants, not courts, should be made to bear the consequence of non-disclosure. It is the court system, after all, that judicial estoppel aims to protect."[13]

In sum, the factors tip the balance of equities in favor of the Army. Accordingly, the Army's motion to dismiss is granted.

## IV.  CONCLUSION

"This court joins the multitude of courts recognizing the doctrine of judicial estoppel as a bar to a debtor's assertion of a claim not identified as an asset in an earlier bankruptcy proceeding."[14] The Army's motion to dismiss is GRANTED.

IT IS SO ORDERED.

Dated: April 22, 2011

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[12]  *Cf. Chandler v. Samford University,* 35 F.Supp.2d 861, 863, 865 (S.D. Ala. 1999).

[13]  *Scoggins,* 92 F.Supp.2d at 1376.

[14]  *Chandler,* 35 F.Supp.2d at 864.